Original

U.S. DISTRICT COURT E.D.N.Y.
★ MAR 23 2007 ★
BROOKLYN OFFICE

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District Eastern District of NY | |
|---|---|---|
| Name | Prisoner No. 03A4630 | Case No. CV 07 1326 |
| Place of Confinement Upstate Corr. Fac. Malone, NY 12953 | | |
| Name of Petitioner (include name under which convicted) Bethel Jones | V. | Name of Respondent (authorized person having custody of petitioner) Robert K Woods |
| The Attorney General of the State of: New York | | |

AMON, J. MATSUMOTO, M.J.

PETITION

1. Name and location of court which entered the judgment of conviction under attack New York – SUPREME COURT, KINGS COUNTY Brooklyn
2. Date of judgment of conviction AUGUST 14, 2003
3. Length of sentence 20 YEARS TO LIFE
4. Nature of offense involved (all counts) SECOND DEGREE (INTENTIONAL) MURDER
5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☒
   (b) Judge only ☐
7. Did you testify at the trial?
   Yes ☐ No ☒
8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐



RECEIVED
MAR 23 2007
PRO SE OFFICE

9. If your answer to 8. was "yes," attach a copy of the appeals court decision to this petition and answer the following:

(a) Name of court (e.g., NYS Sup. Court, 4th Dept.) Supreme Court Appellate Div. (2nd)

(b) Result AFFIRMED

(c) Date of result and citation, if known January 24, 06

(d) List all grounds you raised (1)

(2)

(3) SEE EXHIBIT

(4) "B"

10. Did you seek further review of the appeals court decision by a higher state court (e.g., the NYSCourt of Appeals)?

Yes ☒ No ☐

11. If your answer to 10. was "yes," attach a copy of the higher state court decision to this petition and answer the following:

(a) Name of court New York Court of Appeals

(b) Result Leave to appeal Denied

(c) Date of result and citation, if known June 5, 2006

(d) List all grounds you raised (1)

(2)

(3) SEE EXHIBIT

(4) "B"

12. Did you file a petition for certiorari in the United States Supreme Court?

Yes ☐ No ☒

13. If your answer to 12. was "yes," attach a copy of the United States Supreme Court decision to this petition and please answer the following with respect to each direct appeal you asked the United States Supreme Court to review:

(a) Result ____________________

(b) Date of result and citation, if known ____________________

(c) List all grounds you raised (1) ____________________

(2) ____________________

(3) ____________________

(4) ____________________

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g. a petition under NY CPL § 440, a state habeas petition, or a previous petition under 28 U.S.C. 2254) with respect to this judgment in any court, state or federal?

Yes ☐ No ☑

15. If your answer to 14. was "yes," attach a copy of that court's decision to this petition and give the following information:

(a) Name of court ____________________

(b) Nature of proceeding ____________________

(c) Date Filed ____________________

(d) List all grounds you raised (1) ____________________

(2) ____________________

(3) ____________________

(4) ____________________

(e) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes ☐ No ☐

(f) Result ______

(g) Date of result ______

16. If your answer to 14. was "yes" and you also filed a second petition, application, or motion, attach a copy of that court's decision to this petition and give the same information:

(a) Name of court ______

(b) Nature of proceeding ______

(c) Date Filed ______

(d) List all grounds you raised (1) ______

(2) ______

(3) ______

(4) ______

(e) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes ☐ No ☐

(f) Result ______

(g) Date of result ______

As to any third, fourth, etc. petition, application, or motion, attach a copy of that court's decision to this petition and give the same information asked for under 15. and 16.

17. If your answer to 14. was "yes" and if the court did not grant the petition(s), application(s), or motion(s) you listed under 15. and 16., did you appeal to an intermediate court of appeals (e.g., the New York State Court of Appeals or the Second Circuit Court of Appeals)?

Yes ☐ No ☐

18. If your answer to 17. was "yes," attach a copy of the appeals court decision to this petition and answer the following regarding each petition, application, or motion:

(a) Name of court ______

(b) Date Filed ______

(c) Result ______

(d) Date of result and citation, if known ______

(e) List all grounds you raised (1) ____________________

(2) ____________________

(3) ____________________

(4) ____________________

19. Did you appeal to the highest state court (e.g., the NYS Court of Appeals) or the United States Supreme Court for review of decisions regarding the petition(s), application(s), or motion(s) you listed in 15. and 16.?

(a) First petition Yes ☐ No ☐

(b) Second petition Yes ☐ No ☐

(c) Third petition Yes ☐ No ☐

[List any other petition and indicate yes or no.]

20. For each "yes" answer in 19., attach a copy of that court's decision to this petition and give the following information:

(a) Name of court ____________________

(b) Date filed ____________________

(c) Result ____________________

(d) Date of result and citation, if known ____________________

(e) List all grounds you raised (1) ____________________

(2) ____________________

(3) ____________________

(4) ____________________

21. If you did *not* appeal from the adverse action on any petition, application, or motion, explain briefly why you did not:

____________________

22. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize briefly the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. See 28 U.S.C. §2254(b). If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date. See 28 U.S.C. §2244(b).

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: Denial of Effective assistance OF COUNSEL

Supporting FACTS (state briefly without citing cases or law):

SEE BRIEF Attached

FORM B: AFFIDAVIT or AFFIRMATION IN SUPPORT OF MOTION

UNITED STATES DISTRICT COURT
! DISTRICT OF NEW YORK

---

Bethel Jones
03A4635

Plaintiff(s),

v.

Robert K Woods
Superintendent of
Upstate Corr. Fac.

Defendant(s).

AFFIDAVIT/AFFIRMATION
IN SUPPORT OF MOTION
______-CV-______

---

STATE OF NEW YORK )
COUNTY OF Franklin ) ss.:
*(your residence)*

*(Fill your name in one of the two blanks below, depending on whether you are having this notarized (use the first line) or swearing to this under penalty of perjury (use the second line); cross out the unused line.)*

I, Bethel Jones., being duly sworn, depose and say:

I, Bethel Jones, make the following affirmation under penalty of perjury:

2. I am the plaintiff in the above-entitled action and respectfully request that the Court issue an order *(briefly describe what you want the Court to do)*

Issue a writ of Habeas Corpus

3. The reasons why I believe I am entitled to the relief I seek are set forth below.

4. (State the reasons why you believe that you are entitled to the relief you seek. Be specific and use short paragraphs. Add additional sheets of paper if necessary; also attach copies of any exhibits to which you refer in your affirmation.)

SEE BRIEF ATTACHED

5. I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Dated: 3-13-07

Bethel Jones
*(Your Signature)*

*(Have this section completed if you are having this document notarized)*

Sworn to before me this 13 day of March, 2007

Notary Public

Raymond W. Dreius
Notary Public, State of New York
Franklin County 01DR6051769
Commission 12/4/2010

UNITED STATES DISTRICT COURT
Eastern DISTRICT OF NEW YORK

Bethel Jones
(Name of Plaintiff or Petitioner)

v.

Robert K Woods
(Name of Defendant(s) or Respondent(s))

**MOTION TO PROCEED *IN FORMA PAUPERIS* AND SUPPORTING AFFIRMATION**
______-CV-______

I, Bethel Jones, *(print or type your name)* am the plaintiff/petitioner in the above-entitled case and hereby request the Court's permission to proceed *in forma pauperis*.

In support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of this action or to give security therefor and that I believe I am entitled to redress.

**I further declare that the responses which I have made in this affirmation below are true.**

1. Are you presently employed? Yes____ No ✓
   My Employer's Name and Address is: ______
   My Gross Monthly Wages are: $______
   If you are not presently employed, state
   Your Last Date of Employment: N/A
   Your Gross Monthly Wages at that time: N/A
   Is your spouse presently employed? Yes____ No ✓
   My Spouse's Employer's Name and Address is: ______
   My Spouse's Gross Monthly Wages are $______

2. Have you received any money from any of the following sources within the past twelve months:
   a. Business, profession or self-employment? Yes____ No ✓
      If yes, state source and amount received per month $______
   b. Rent payments, interest or dividends? Yes____ No ✓
      If yes, state source and amount received per month $______
   c. Pensions, annuities, disability, or life insurance payments? Yes____ No ✓
      If yes, state source and amount received per month $______
   d. Gifts or inheritances? Yes____ No ✓
      If yes, state source and amount received per month $______
   e. Child Support? Yes____ No ✓
      If yes, state amount received each month $______
   f. Government Benefits (Social Security, SSI, Welfare, AFDC, Veterans, etc.)? Yes____ No____
      If yes, state source and amount received per month $______
   g. Friends, Relatives or any other source? Yes____ No____
      If yes, state source and amount received per month $ N/A

   If you have not received any money from any of the above sources, please explain how you are currently paying your expenses: ______

3. What is your total gross monthly income today: $ NONE

4. How much cash do you have on hand? $ NONE

5. How much money do you have in a checking account(s)? $ NONE

6. How much money do you have in a savings account(s)? $ NONE

7. If you are an inmate of a correctional facility, state the amount of funds in your inmate account (NOTE: prisoners must have inmate account balances certified by an authorized official of the correctional facility and must include a signed Authorization for payment of the filing fee): ______

8. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? Yes ____ No X
If so, describe the property in detail and give an estimated value of the property: ______

If you own property, are you paying off a loan or mortgage on it? Yes ____ No X
If yes where are you obtaining the money to make such payments: ______

9. If you are not an inmate, state your total monthly household expenses:
Rent or mortgage $____ Food $____ Utilities $____ All other expenses $____
If your monthly expenses exceed the amount of income you listed in # 3 above, please explain how you are paying your expenses ______

10. List all of the people who are in your household and state the amount of money each one contributes to household expenses each month: ______

11. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: ______

12. Have you been adjudicated bankrupt within the past ten (10) years? Yes ____ No ____
If the answer is yes, please include the court and date of filing ______

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on 3-13-07
(Date)

Bethel Jones
(Applicant's Signature)

**PRISON CERTIFICATION SECTION**

(Required for Prisoner Requests Only; Prisoner Requests Must Have This Section Completed By Prison Official)

I certify that the movant has the sum of $______ on account to his/her credit at the ______ Correctional Facility where s/he is currently confined.
I further certify that the movant has the following securities to his/her credit according to the institution's records: ______
I further certify that the movant's average account balance was $______ during the last six months.

______
Signature of Authorized Officer of Institution

______
Print Name of Authorized Officer of Institution

# AUTHORIZATION

## PRISONER'S CIVIL ACTION FILING FEE
## DISTRICT OF NEW YORK

I, (print name) Bethel Jones, request and authorize the agency holding me in custody, to send to the Clerk of the United States District Court, Western District of New York, a certified copy of the statement for the past six months of my trust fund account (or institutional equivalent) at the institution where I am incarcerated.

I further request and authorize the agency holding me in custody to calculate and disburse funds from my trust account (or institutional equivalent) in the amounts specified by 28 U.S.C. § 1915 (b), to deduct those amounts from my prison trust account (or institutional equivalent), and to disburse those amounts from my account to the United States District Court for the Western District of New York.

*This Authorization shall apply to any other agency into whose custody I may be transferred, and to any other district court to which my case may be transferred and by which my poor person application may be decided.*

This Authorization is furnished in connection with the commencement of a federal court civil action, and I understand that I must pay the total amount of the filing fee, which is $350.00.

**I understand that by signing this authorization, the entire filing fee of $350.00 will be paid to the court in installments by automatic deductions from my prison trust fund account <u>even if my case is dismissed before the entire amount of the fee has been deducted from my account</u>.**

Dated: March 13, 2007

Bethel Jones
Signature of prisoner

Bethel Jones
Printed name of prisoner

03A4635
Inmate number of prisoner

**FORM C(2) — AFFIDAVIT OF SERVICE**
**(If you are having your signature notarized, use this form)**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW YORK

Bethel Jones
03A4635

Plaintiff(s),

v.

Robert K Woods
Superintendent of
Upstate Corr. Fac.

Defendant(s).

AFFIRMATION OF SERVICE

______-CV-______

I, *(print your name)* Bethel Jones, make the following affirmation under penalty of perjury:

I have served a copy of the attached motion papers upon the all of the other parties in this case by *(check the one which applies)* Mailing XXXX Hand-delivering ______ the motion papers to the attorneys for all of the other parties at the following addresses:

KINGS COUNTY DISTRICT
ATTORNEY
210 Joralemon Street
Brooklyn, NY 11201

on *(state the date you hand-delivered or mailed the motion papers to the other parties)* ______

Bethel Jones
*(your signature)*

Sworn to before me this 13
day of March, 2007

[signature]
Notary Public

Raymond W. Drelus
Notary Public, State of New York
Franklin County 01DR6051765
Commission 12/4/2010

United STATES DISTRICT COURT
SECOND DISTRICT OF NEW YOR

| | |
|---|---|
| Bethel Jones #03A4635<br><br>petitioner, | Petition for writ of Habeas Corpus |
| v | Civil # _____ |
| Robert K Woods,<br>Superintendent of<br>Upstate Correctional<br>Facility<br><br>Respondent. | |

## Procedural History

1 Petitioner indictment number in the trial court below was 8374/02

☆2. The full names of the original parties were People of the state of New York against Bethel Jones.

☆3. This action was commenced in Supreme Court, King County.

☆4. This action was commenced on December 6, 2002 with the filing of an indictment.

☆5. By way of judgment by jury trial, petitioner was convicted of Second Degree Murder (intentional) on August 14, 2003

☆6. By way of such conviction, petitioner was subsequently sentenced to 20 years to life

*7. Petitioner filed a timely notice of appeal to the Appellate Division, Second Dep't, and on December 8th, 2003 was granted leave to appeal as a poor person and counsel Lynn W.L. Fahey represented petitioner on direct. AD No. 03-08030

*8. On January 24, 2006, the Appellate Division Affirmed the petitioner's direct Appeal (See EXHIBIT A)

*9. Leave to appeal to the Court of Appeals was timely filed by petitioner's Appellate counsel on March 31, 2006 (SEE EXHIBIT B)

*10. Petitioner also filed an addendum

leave to appeal in addition to counsel's application which was also received timely (SEE EXHIBIT C)

☆ 11. On June 5, 2006, petitioner's application(s) for leave to appeal were denied by the Court of Appeals (SEE EXHIBIT D).

☆ 12. At this point, petitioner has properly exhausted his remedies to the highest state court and now is ☆properly before this court☆ seeking an issuance of habeas corpus on the following exhausted constitutional issues

☆☆ Petitioner properly files this petition within the one year time limit as allowed by the ADPEA from last state ruling

Issues properly before this Court review

Point I

Petitioner was denied his right to enjoy effective assistance of trial counsel by virtue of counsel's errors when in fact viewed in a cumulatively fashion, rise to a level of prejudice in which his deficiencies include:

(A) Failure to object to the people's improper impeachment; (Cause and prejudice).

(B) Failure to object to evidence relied upon by the jury which was not submitted as evidence; (cause and prejudice).

(C) Failure to object to prosecutor's Interent-ial bolstering (Cause and prejudice).

(D) Failure to object to hearsay statements made during both hearing and trial stages in violation of Supreme court's CRAWFORD v WASHINGTON ruling (Cause and prejudice).

(E) Failure to object to prosecutor's burden shifting summation (Cause and prejudice).

(F) Failure to object to the "twin count" charge that were submitted to the jury (cause and prejudice).

## Point II

Counsel's cumulative errors were not harmless when view under the Federal Constitution.

## CONCLUSION

# Statement of FACTS

- SEE RECORDS BELOW -

## Point I

Petitioner was denied his right to enjoy effective assistance of trial counsel by virtue of counsel's errors when in fact viewed <u>cumulatively</u>, give rise to a level of prejudice suffered by petitioner at the hands of ineffective counsel (US Const., Amends VI, XIV; N.Y. Const. Art. I § 6).

The sixth Amend. of the US Const. guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defense. "The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." <u>Kimmelman v. Morrison</u>, 477 US 365, 374 (1986). Furthermore, the U.S Supreme

Court has recognized that "the right to counsel is the right to effective assistance of counsel" McMann v. Richardson, 397 US 759, 771 (1970).

The Supreme Court established the test for determining whether a defendant has received the effective assistance of counselor in Strickland v Washington, 466 US 668 (1984). See also United States v Gordon, 156 F3d 376 (2d Cir 1998); Sarroca v United States, 250 F3d 785 (2d Cir. 2001); Aeid v Bennett, 296 F. 3d 58 (2d Cir 2002). The High Court stated that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result". Strickland, 466 U.S. at 686. The Strickland test has two components, both which must be satified to establish that defense counsel's performance was ineffective. First, "the defendant must show that the counsel's preformance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. Guerrero v United States, 186 F3d 275 (2nd Cir 1999) (successful ineffectiveness claim required showing that outcome would have been different).

"It is the client's right to expect that his lawyer will use every skill, expend every energy, and tap every legitimate resource in exercise of independent professional judgment on behalf of the client and in undertaking representation of the client's interest." Frazer v United States, 18 F. 3d 778, 785 (9th Cir 1994). "Defense counsel must do his utmost to bring his legal acumen to bear on behalf of the defendant; keep the defendant fully informed of developments in the case and consult with the defendant on all major decisions to be made; conduct a reasonable pretrial investigation, which should contact potential witnesses; prepare adequately and professionally for trial; conduct the

trial to the best of his ability; and, at the bottom, serve as a vigorous devoted advocate of the defendant's cause". United States Ex Rel Partee v Lane, 926 F2d 694, 702 (7th Cir 1991)

The ABA Standard Relating to the Administration of Criminal Justice provide:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenue leading to the facts relevent to the merits of the case and the penalty in the event of a conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcements authorities. The duty to investigate exists regardless of the accused's admission or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty. Standard 4-4.1.

The courts have recognized that, in certain circumstances, failure to investigate a defense would amount to ineffective assistance of counsel requiring a reversal of the conviction. The supreme Court has explained the relationship between an attorneys investigation and the choices that he makes with regard to matters of trial strategy. Pavel v Hollin 261 F3d 210, 200 (2d cir 2001)(citing Strickland 466 US at 690-91). In the case of Washington v Murrary, 4 F.3d 1285 (4th Cir. 1993), the court held that counsel was ineffective for failing to investigate a defense based upon forensic evidence. Since counsel failed to inquire into forensic evidence, "counsel was

completely in the dark about the import of the evidence, and therefore, could not have made a strategic choice against using it Id. at 1288. Moreover, it is highly recognized that when viewing counsel's errors, it can be viewed individually or cumulatively.

A claim of ineffective assistance of counsel when evaluated individually might not amount to a due process violation. However, a claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's deficiencies. Rodriguez v Hoke, 928 F2d 534

(2nd cir 2001). Moreover each of counsel's deficiency to be viewed cumulatively, would have had to been exhausted on a state level Grady v. Lefevre 846 F2d 862, 865 (2 cir 1988). Here, counsel's deficiencies have been fully exhausted on a state level and for any claim of deficiency given rise to prejudice which has not been properly before a state Appellate court is subjected to the cause and prejudice test which exist to allow these deficiencies to be decided upon the merits Coleman v Thompson, 501 US 722.

Again, here, counsel's errors when in fact

viewed in a cumulative fashion by this court will clearly reveal counsel's ineffectiveness.

However, regarding all issues raised on petitioner direct appeal (with the exception of his ineffective assistance of counsel claim), all were viewed as "unpreserved" by the Appellate Division including issue raised by petitioner in supplemental pro-se brief. Trial counsel virtually preserved no issue to be properly before this court standing alone, thus, the requisite of cause and prejudice test must be shown by the petitioner herein. Wainwright v. Sykes, 433 US 72, 81.

with respect to the cause issue, petitioner

is not a law school educated lawyer who can easily impose his will on his attorney for him to object to the obvious hearsay statement which were made. Whether such warranted objection would have been overruled or sustained, at the very least the issue would have been preserved for appellate review leading to exhaustion and if need be, properly before this court.

The petitioner herein can also show prejudice. To overcome a procedural default, a habeas petitioner must demonstrate "actual prejudice as a result of the alleged constitutional violations".

## Improper Impeachment

Marlon Belgrave. A key witness against the petitioner made a statement against petitioner identifying petitioner as the shooter during an interview at the precienct. However, Marlon Belgrave did not testify at petitioner's wade hearing and in fact failed to identify the petitioner as the shooter during trial at all. At that time, the prosecutor proceeded to impeach Belgrave. It is clear CPL 60:35(1) provides:

> When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove

the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory of such testimony

Thus, the prosecution may impeach its own witness with a prior sworn statement only if the witness's trial testimony tends to disprove the people's case in that such impeachment should not be relied on by the jury a evidence-in-chief.

Here, without counsel's object, Belgraves' Impeachment was not only improper but relied on by the jury as the chief evidence against

petitioner during jury deliberation. Counsel's vigorous objection to the impeachment and the tape statement showed that he understood the importance of the evidence and that his strategy was to oppose it. Yet, although the potential impeachment use of Belgrave prior statement was the single most important legal issue in the case, defense counsel was oblivious to the law. Given counsel's obvious desire to bar the impeachment, his failure to take readily available steps to prevent it and mitigate it's impact can be explained by only his ignorance to relevant law. Moreover, having stated the wrong ground for objections

counsel never requested the limited charge protecting petitioner rights and mandated even for impeachment properly undertaken. Counsel's failure to be familiar with the law prejudiced petitioner throughout his trial. In summation, the People persistently invited the jury to heavily rely on the impeachment evidence as "evidence in chief" The prosecution repeatedly and improperly argued that three witnesses had identified the petitioner as the shooter when in fact only two other criminals had done so (882-84, 888) Prosecution urged the jury to listen to Belgrave's taped statement to learn what had taken place on

the night in question when in fact, such tape during deliberation was not even summitted as evidence (see further below). This impeachment tape was critical in the jury decision of a guilty verdict. In fact, so critical that this impeachment tape was the sole evidence that the jury requested to be read back during their deliberation for the other suspect eyewitness testimony were clearly unreliable. This impeachment tape was used very loosely during trial. This tape was used to implicate petitioner. Inference were made by prosecution regarding this tape that the sole reason of recanting his statement was because

he feared the appellant (872-84 886 888) All the above, including Belgrave "shaking" in court were drawn from the district Attorney regarding this impeachment tape but yet, counsel did not object.

Ortega v Duncan, 333 F3d 102 has reasoned that while recantation must be "looked upon with the utmost suspicion", it lack of veracity cannot, in and of itself, establish whether testimony given at trial was in fact truthful and in fact weigh all the evidence before it, but not limited to the recantation itself. Here, this entire case rested solely on testimony

of other unreliable criminals. One, Talbot, who was fighting immigration. Surely he would fully cooperate with the prosecution. Secondly, Tuten, only cooperated when she was arrested on multiple drug charges. Surely her untrue testimony against the petitioner in exchange for dropping the charges against her is what compelled her to give untrue testimony. It cannot be stressed no more than it has been that Belgrave's testimony was the key to petitioner conviction. But once he rightfully would not fall victim to the police & prosecution coercive tactics and recanted his false identification of petitioner during trial, his

recantation, by way of counsel's objection; should have and surely would have compelled the court to view such recantation in light of all the evidence. Moreover, counsel's objection to the improper impeachment of Belgrave after such recantation would have not only preserved such issue, but would have prevented the jury from using such evidence (tape) as evidence in-chief. Thus, leaving the prosecution with a very weak case. Further example of ineffectiveness is explained immediately below.

<u>Failure to object to evidence relied on by the jury which was not submitted as evidence</u>

The law is clear on this issues as well, the court may not the jury to rely on evidence not in evidence at least where that item is not something which is purely a matter of "housekeeping United States v Ronder 639 F2d 931. CPL 310.20 sub 1 of New York law is also clear, "no provision authorizes submission of unadmitted exhibits & evidence since unadmitted exhibit has not undergone the test of cross examination, its consideration by the jury directly infringes on the defendant's right of confrontation". Here, the crux of the prosecution evidence

was this impeachment tape which counsel never objected to. And for this wrongfully used impeachment tape to be relied on heavily by the jury during deliberation, was highly prejudicial towards the ~~de~~ petitioner because this tape was never even submitted as evidence for jury's consideration (845-51). This deficiency is pivotal because again, the jury ~~[illegible]~~ specifically requested to have the impeachment tape which, again, was not even submitted into evidence, to be read back during deliberation. Therefore, not only was the impeachment improper but should not have even been allowed to be read back for it was

not apart of deliberation evidence. Counsel's gross deficiency to object to this contributes to his ineffectiveness.

Failure to object to prosecution Repeated Inferential Bolstering and Summation misconduct

Defense counsel additional errors were very thematic; most of them went to the heart of petitioner case, the people's proof of identity. Four times during trial, the prosecutor impermissibly suggested, via his police witness, that Belgrave had indentified petitioner as the shooter. In his opening statement, he announced that the police began seeking petitioner

promply after speaking with eyewitnesses on the day of the shooting. then he improperly elicited from two detectives that the "next step" the police took after speaking with witnesses Belgrave, Holland, and Talbot soon after the shooting was to search for petitioner (630, 794). "Improper bolstering when, in opening statement, prosecutor told jury that an officer would testify that the complainant identified defend, and then elicited that testimony from the officer".

Moreover, prosecutor then improperly suggested that Belgrave had idenified petitioner a fourth time when elicited, from one detective that, in

conducting a lineup, he asked Belgrave whether he recognized anyone, then "What number do you recognize?" and "Where do you recognize the person from?" and Belgrave responded to each question (815-16) Given the prosecutor improper impeachment of Belgrave and the highly prejudicial CRAWFORD violation (see further below) he had previously elicited from the police, this additional questioning could have only have further signaled that Belgrave had identified appellant as the shooter, this time at the line up. This implied recital of Belgrave's out-of-court hearsay identification of petitioner was improper. Ryan v. Miller, 303, F3d

231, 248 (2nd cir 2002); Mason v. Scully, 16 F3d 38, 42, 43 (2nd cir 1994). Again, counsel lack of objections to any of the above demonstrated a spillover effect which lead to another constitutional violation of petitioners' rights that counsel failed to preserve.

CRAWFORD VIOLATION

In light of the above, the people introduced several different witnesses who never testified in the trial, when each detective testified during the hearing and trial about interviewing these same witnesses and only after receiving information, petitioner became the primary suspect of the crime. The

improper tactics used by the prosecution on impeaching both of the alleged eyewitnesses during the trial can only amount to a clear confrontation clause violation.

The four conditions presence in the US Supreme Court held as following: (1) the statement is "testimonial" in nature; (2) A declarant who is unavailable to testify at trial; (3) the defendant has had no prior opportunity to cross examine the said declarant; and (4) the statement is offered for the truth of the matter asserted herein.

Taking in account the fact that Belgrave failing to testify at the grand jury, by his own freewill

and was forced to make a presence during petitioner trial by order of a material witness order, clearly shows that witness testimony should have been rejected in this case. However the judge improper ruling on the reliability of the out-of-court identification of the defendant without allowing the complainant testimony during the suppression hearing as well as the absence of the petitioner clearly violates the spirit of Crawford, where the Supreme Court justice ruled that a lower trial judge should not be premitted to pass upon the truthfulness of any witness out of court statements without given the defense the fair opportune to confront his accuser Id at 1367. Nonetheless,

during the hearing + trial stages, the prosecution introduced the arresting ~~[illegible]~~ officer's claim that the petitioner was picked out of the stationhouse lineup, without being any of the alleged witnesses to the actual wade ~~[illegible]~~ hearing surely denied the petitioner the fair opportune to properly cross examinate the only two witnesses, who once they were called to testify at trial recanted there prior statements concerning the petitioners being the suspect in this case. Petitioner should have been allowed the right to properly address the reliable and lack of corroboration of both versions given by the above witnesses in the hearing and trial proceedings Mancusi v Stubbs

408 US 204 (1972), Chambers v Mississippi 410 US 284, 295 (1973).

When evaluating this claim, this court should apply the cause & prejudice test for the appellate Division expressly ruled that this crawford issue standing alone is "unpreserved" for review, thus, petitioner cause is counsel's continuous lackluster preformance in not objecting to a clear Crawford violation in that further the prejudice (overall) which petitioner has suffered at the hands of his trial counselor but unfortunately, his deficiencies continued.

Failure to object to burden shifting summation by the prosecution

With the prosecutor being unhindered by counsel's objections, the prosecutor shifted his burden of proof and repeatedly vouched for his witnesses. He rhetorically asked why Talbot "would come in here and [accuse petitioner]" if he "wasn't the guy who [had] killed [Talbot's] friend and if he didn't [shoot Rivers], why are his friends coming in here ... and identifying him as the shooter" (872, 887).

The prosecutor further erred in suggesting, contrary to the record, that Tuten, one of two unreliable witnesses, was appellant's/petitioner's "friend", thereby strenghthening her identification of

petitioner and suggesting she had no motive to lie. Yet, this argument was not legitimately drawn from the record. The prosecutor also vouched for his witnesses assuring the jury that they (she) had no motive to lie in that she further was telling the truth & not exaggerating (872 78). However, Tuler had a motive to lie indeed for she only came forward after she was charged with a drug possession some four (4) months later after the incident. Surely if what she testified to was true, she would have cooperated from the very outset and not after she was arrested for drug (which she was never charged for further giving her a motive to ...

in fact lie on the petitioner). Moreover in the way of shifting the burden were his witness, on who had apparently cried on the stand, faking their emotions, since they were incapable of acting. All of this, again, without virtually no protest from defense counsel, the prosecutor also repeatedly and improperly inflamed the jury's passion against appellant and elicited sympathy for his witnesses by suggesting that they feared the petitioner. What is more, the prosecutor inappropriately argued that fear proved his case. He argued that Belgrave's "fearful" equivocation proved petitioner's guilt and that Luten and Belgrave were afraid because they saw the

petitioner commit the shooting. Counsel did not object in that as a result, the burden of proof was placed on the defense in which based on counsel's preference, was impossible to overcome.

Twin Count Indictment

In light of the dramatic changes with respects to depraved indifference murder and intentional murder in the New York State court People v Sanchez 98 NY2d 373 (2002); People v. Hafeez, 100 NY2d 253 (2003); People v Gonzalez 1, NY3d 464 (2004); People v Payne 3 NY3d 266 (2004); People v Suarez, 6 NY3d 202 (2005) and

as recently in People v Parker, decided on May 18, 2006, counsel's failure to object to the submission of both deprave and intentional murder charges to the jury was possibly the most deficient error counsel made.

"... we cannot overlook defense counsel's error in permitting the twin counts of intentional homicide and depraved indifference murder to be submitted to the jury without objection. It has long been established that one cannot simultaneously act intentionally and recklessly and that recklessness is an element of depraved indifference murder People v Gallagher 69 NY2d 525 [and also see Policano

v Herbert, 430 F3d 82]. Despite the petitioner being found guilty of intentional murder or no other, in the absence of a reasonable explanation for his failure to object and raise a dispositive defense, this single error deprived defendant of his right to the effective assistance of counsel)) Parker via Justice Carpinello, J.

In this instant case, when submitting the twin count indictments, the prosecution was very flamboyant when doing so. Informing the jury to "take your pick" (899) Exhibit "F" the court only compiled this error (937) Exhibit G Counsel, did nothing. As in Parker, his counsel was ~~[illegible]~~ deemed ineffective as a result, thus, under equal protection of the law, so should petitioner counsel.

## Point II

Counsel's errors, cumatively, were not harmless error when viewed under the federal constitution

In order for a federal constitional error to be declared harmless, it must be harmless beyond a reasonable doubt. Chapman v California, 386 US 18, 24 (1967). The issue is not "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of, [but] whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction". Fahy v Connecticut 375 US 85 (1963).

Here, without question counsel errors when view, again, cumatively contributed to his conviction.

Impeachment tape

To reiterate, this tape was never even submitted into evidence. However, it was heavily considered as evidence-in-chief by the jury without an objection by counsel. A simple objection would have precluded the impeachment tape from being relied on as evidence-in-chief and subsequently removing the prosecutors key witness. What remains are two wholly unreliable witness with criminal records:

Witness Tablot

This witness was not even a US citizen

at the time of the alleged incident he claimed to witness. With a criminal record dating back over 10 yrs, Talbot was being deported back to his country. However, once he step forward and accused the defendant/petitioner, he was never deported. Moreover, this is the same witness who returned to the scene of the crime to try and cause the petitioner himself grave harm (547-48, 572-73).

Witness Tuten

Another criminal witness who only came forward after being arrested on possession of drugs around the same time petitioner was arrested. Charges

were eventually drop in exchange for her false testimony against the petitioner (See witness record of conviction) (See Exhibit 'E').

Remain Witnesses

Never testified against petitioner

Thus, counsel not objecting and allowing this impeachment tape to be viewed as evidence-in-chief, contributed to a 3rd witness against the petitioner. It is highly likely that petitioner would not have be convicted on the word of two convicted criminals alone. This is a case that involved no physical evidence, DNA, or a confession by the petitioner. Simply the word of two criminals.

Furthermore, since almost all of counsel's deficiencies went to the heart of the testimony against petitioner, his deficiencies were not harmless since that is all the evidence surrounding this case where identification was crux. Mitchell v Hoke, 745 F. Supp. 874. Anytime a defendant is denied his right to effective assistance of counselor in such a prejudicial manner as the case here, error cannot be harmless.

CONCLUSION

Petitioner was denied his right to effective assistance of counselor when view cumatively in that as a result, errors were not harmless giving way

to this court proper issuance of this instant writ. Petitioner writ of habeas corpus should be granted in all aspects and petitioner should be released from the respondent's custody or as this court sees just and proper

Dated March 23 07

Respectfully Submitted by:
Bethel Jones
Malone, NY 12953

# EXHIBITS

# A - G

OFFICE OF
CHARLES J. HYNES
KINGS COUNTY DISTRICT ATTORNEY

W Rec'd 7/3/06

# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

D9550
C/cf

_____AD3d_____

Submitted - January 6, 2006

BARRY A. COZIER, J.P.
FRED T. SANTUCCI
ROBERT A. SPOLZINO
PETER B. SKELOS, JJ.

2003-08030

DECISION & ORDER

The People, etc., respondent,
v Bethel Jones, appellant.

(Ind. No. 8374/02)

Exhibit "A"

Lynn W. L. Fahey, New York, N.Y. (Warren S. Landau of counsel), for appellant, and appellant pro se.

Charles J. Hynes, District Attorney, Brooklyn, N.Y. (Leonard Joblove and Cynthia Kean of counsel), for respondent.

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Chambers, J.), rendered August 14, 2003, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

ORDERED that the judgment is affirmed.

The defendant's contention that the trial court erred in permitting the People to impeach their own eyewitness with a prior inconsistent statement contained on an audiotape is unpreserved for appellate review because the ground urged by the defendant on appeal was not specifically raised in an objection made to the trial court (*see* CPL 470.05[2]; *People v Solomon*, 16 AD3d 701, 702; *People v Smith*, 294 AD2d 381). In any event, the contention is without merit. In his pretrial audiotaped sworn statement, the eyewitness stated that he saw the defendant shoot the victim, while at trial, the eyewitness testified that he did not see who shot the victim and he did not observe the defendant at the scene when the shooting occurred. Thus, the eyewitness's trial testimony tended to disprove the People's case and affirmatively damaged the People's position. Accordingly, the People were properly permitted to employ the tape to impeach the eyewitness

pursuant to CPL 60.35(1) (*see People v Magee*, 128 AD2d 811; *see also People v French*, 237 AD2d 944, 945; *People v Busiello*, 234 AD2d 557; *People v Broomfield*, 163 AD2d 403, 403-404; *cf. People v Fitzpatrick*, 40 NY2d 44, 51).

Also unpreserved for appellate review (*see People v Nuccie*, 57 NY2d 818, 819-820; *People v Pettus*, 22 AD3d 869; *People v Francis*, 137 AD2d 553) is the defendant's contention that the trial court failed to provide a timely or sufficiently specific instruction to the jury that it was to consider the tape only for purposes of impeachment, and not as evidence-in-chief (*see* CPL 60.35[2]). In any event, the court's instruction in this regard was adequate (*see People v Andujar*, 290 AD2d 654, 657; *People v Bass*, 255 AD2d 689; *People v Broomfield, supra* at 404).

The defendant was not deprived of the effective assistance of counsel (*see People v Benevento*, 91 NY2d 708, 712; *see also People v Taylor*, 1 NY3d 174; *People v Ellis*, 81 NY2d 854; *People v Baldi*, 54 NY2d 137, 147).

The defendants' remaining contentions, including those raised in his supplemental pro se brief, are unpreserved for appellate review, and we decline to review them in the exercise of our interest of justice jurisdiction.

COZIER, J.P., SANTUCCI, SPOLZINO and SKELOS, JJ., concur.

ENTER:

James Edward Pelzer
Clerk of the Court

January 24, 2006

APPELLATE ADVOCATES

2 RECTOR STREET - 10TH FLOOR, NEW YORK, NEW YORK 10006
PHONE: (212) 693-0085 FAX: (212) 693-0878

ATTORNEY-IN-CHARGE
LYNN W. L. FAHEY

ASSISTANT ATTORNEY-IN-CHARGE
BARRY S. STENDIG

SUPERVISING ATTORNEYS
WINSTON MCINTOSH
DAVID P. GREENBERG
ERICA HORWITZ
PAUL SKIP LAISURE

ALEXIS A. ASCHER
SARAH J. BERGER
STEVEN R. BERNHARD
DENISE A. CORSI
M. CHRISTOPHER FABRICANT
JONATHAN GARVIN
JOHN GEMMILL
BERTRAND J. KAHN
WILLIAM G. KASTIN
JONATHAN M. KRATTER
WARREN S. LANDAU
BARBARA LERNER
JOSHUA M. LEVINE
LISA NAPOLI
TONYA PLANK
DENISE POWELL

OF COUNSEL
MELISSA S. HORLICK
REYNA E. MARDER
MICHELLE MOGAL

Exhibit 'B'

March 31, 2006

Honorable George Bundy Smith
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, NY 12207-1095

Re: <u>People</u> v. <u>Bethel Jones</u> - Leave Application
AD No. 03-08030; Kings Ind. No. 8374/02
AA No. 2449

Honorable Judge Smith:

I am writing to urge that you grant the leave application pending before you in this case, which presents the following leaveworthy issues, among others outlined in appellant's brief and supplemental <u>pro se</u> brief:

1. Was appellant denied due process when, after permitting the People to impeach one of their own witnesses with his prior taped statement, the court never gave a timely or clear charge that the tape, which was the only significant evidence the jury requested during deliberations, could not be relied on as evidence- in-chief; and is the court's failure to issue that charge reviewable as a matter of law even in the absence of protest or request for the charge. U.S. Const., Amend. XIV; N.Y. Const., Art. I, §6; C.P.L. §60.35. Before the prosecutor started impeaching witness Marlon Belgrave, Belgrave testified only that he did not "remember[]" seeing appellant at the scene just before the shooting and did not see the shooting itself, or who did it, because he retreated into a building before the shooting began.

2. Was appellant denied effective assistance of counsel when his trial attorney failed to protect him from the People's improper use of a prior statement to impeach a neutral prosecution witness, request an instruction limiting the use of the prior statement, object to the prosecutor's eliciting and use of inferential hearsay, and protest the prosecutor's pervasive summation misconduct which

included, among other things, misuse of the impeachment evidence as evidence-in-chief. U.S. Const., Amends. VI, XIV; N.Y. Const., Art. I, §6; Strickland v. Washington, 466 U.S. 668 (1984); People v. Baldi, 54 N.Y.2d 137 (1981).

Among other things, this case evidences a recurring problem in the interpretation and application of C.P.L. §60.35, which establishes when and under what circumstances parties may impeach their own witnesses with prior signed or sworn statements. The statute requires that, before such impeachment is permitted, a party's witness must have given testimony on a material issue "which tends to disprove the position of such party." C.P.L. §60.35(1). Experience shows that trial counsel repeatedly fail to appreciate that impeaching parties must show far more than mere inconsistency or failure to support their case theories in order to impeach their own witnesses. Moreover, courts continue to struggle with the interpretation and application of the requirement that the testimony to be impeached must actually disprove a party's position. Here, for example, the trial court permitted impeachment although the witness's testimony, before impeachment, established only that he did not see and did not remember the critical events. Additionally, the court failed to issue the limiting instruction required by subdivision 2 of the statute, that the prior statement does not constitute evidence-in-chief, and defense counsel neither requested the instruction nor protested the court's failure to issue it. Finally, the prosecutor, in summation, misused the prior statement as evidence-in-chief and, again, defense counsel failed to object.

The Appellate Division decision in this case muddies the waters because it implies that testimony that merely fails to support the People's case "disproves" it within the meaning of the statute. It also entirely reads out of the statute the explicit requirement that, "[u]pon receiving such [impeachment] evidence," the court "must" instruct the jury that such evidence is not evidence-in-chief. Here, despite a promise to issue an immediate and explicit instruction, the only instruction the trial court ever issued that even touched on this matter was the general instruction, in its final charge, on prior inconsistent statements. The Appellate Division held that this instruction was adequate, relying on cases in which courts, unlike here, had repeatedly issued explicit limiting instructions. It also held that the instruction error was unpreserved because counsel did not seek an instruction. This holding is in conflict with some of that Court's own prior decisions, in which it addressed this type of error "on the law," despite the absence of protest, and decisions in the Third Department recognizing that the instruction is to be issued even absent request.

This Court should grant leave to appeal in order to provide further guidance when trial testimony "tends to disprove the position of such party" and, specifically, whether a witness's testimony that he did not see a defendant in the area of a crime because the witness was not there falls within the ambit of C.P.L. §60.35. This case also provides the Court an ideal opportunity to decide an important issue of first impression in this Court, namely, whether a court's failure to issue the instruction required by the statute presents an issue of law even absent a request for it.

The failure of appellant's counsel, and defense counsel in several other recent cases, to properly deal with issues arising under C.P.L. §60.35 underscores that this Court's guidance is needed,

particularly since the Court has never addressed the statute's instruction requirements. Finally, because counsel consistently erred in dealing with C.P.L. §60.35 and the key issue of identification, which formed the basis of his defense, but there were two eyewitnesses who claimed appellant was the shooter, this case presents an ideal opportunity to concretely distinguish between the federal standard for evaluating claims of ineffectiveness, which requires a showing of prejudice, and the state standard, which does not. Even were it true, as the People argued below, that appellant could not show prejudice within the meaning of Strickland v. Washington, 466 U.S. 668 (1984), the state standard for evaluating claims of ineffectiveness does not require that showing. Counsel's consistent pattern of errors on the main issue, identity, rendered his representation meaningless.

## The People's Case at Trial

### The Events of July 10, 2002, as Related by Witnesses Holland, Talbot, and Tuten

On July 9, 2002, Robert Holland observed "Capone" (whom he identified in court as appellant) and others engaged in a dice game that lasted all day, although he could not say exactly when Capone was present (667-82).

The People's first eyewitness, Michael Talbot, had a significant conviction record and was facing deportation as a result of a felony conviction. The People's other eyewitness, 19-year-old Martha Tuten, spoke to police about the events of July 10, 2002, only four months later, after she was arrested for criminal possession of a controlled substance. The day after she spoke with the police, the drug charge was reduced to a violation and she pleaded guilty.

At about 2:00 a.m., on July 10, 2002, Talbot joined the dice game, drank beer, and played against "D." Both Talbot and Tuten, who were somewhat acquainted with "D" or "Capone," identified him as appellant. A dispute arose between Talbot and D and then they fought. Talbot claimed that a "dark-skinned" "younger kid" soon joined in against him; Tuten said there was no second aggressor. Talbot soon broke free and drove away.

Talbot tried to get a gun from his friend, Taquan Rivers, in order to "do[] some shooting." Although he was unsuccessful, he and Rivers nevertheless returned to the scene of the fight. As he and Rivers pulled up, Talbot saw the second, dark-skinned youth who intervened in the earlier fight. Suddenly, he heard four gunshots and saw Rivers slumped over. Within about two feet of the passenger side of his car, he saw D, pointing a gun toward the car. Tuten testified that after Talbot returned to the scene of the fight, D ran to within four feet of Talbot's car, and fired three times into its passenger side.

In his opening statement, the prosecutor had said his police witnesses would testify that, after they interviewed eyewitnesses Talbot, Belgrave, and Holland, "their next step . . . was to begin looking for [appellant]" (424). Two detectives testified that they interviewed eyewitnesses Talbot, Belgrave, and Holland . The prosecutor elicited that, after speaking with the witnesses, the police took the "next

step in [their] investigation" and began seeking appellant. Defense counsel objected to none of this (424, 630, 792-94).

On November 22, 2002, Tuten and Belgrave viewed a lineup, in which appellant was a participant. One detective testified, without objection, that after Belgrave viewed the lineup, he asked whether Belgrave recognized anyone, "What number do you recognize?", and "Where do you recognize the person from?", and Belgrave responded to each question (815-16, 818). Marlon Belgrave testified that he identified appellant as "D," and said he knew him from the fight, but did not identify him as the shooter. Tuten testified that she identified appellant, but did not remember what she told the police about the source of her recognition.

Belgrave's Testimony and the Prosecutor's Impeachment of Him

The prosecutor called the 19-year-old Belgrave as a trial witness, although he was forewarned that Belgrave was uncooperative and appeared only as a result of a material witness order. Belgrave testified that, in the early morning of July 10, 2002, he was playing dice in Brooklyn with several friends, including "Capone" or "D," whom Belgrave had known for a "couple [of] years" and identified as appellant, and Talbot. His testimony about the initial dispute and fight was similar to that of Tuten and Talbot.

When Talbot returned to the scene of the dice game, Belgrave approached him and Talbot asked Belgrave where D went. When Talbot started to reach under his seat, Belgrave began backing up into a building. Accordingly, he did not see the shooter or the shooting (694-95).

When Belgrave testified that he saw "nothing after that" because the building door "went closed," the prosecutor began laying a foundation to impeach Belgrave with a prior sworn statement he gave to the District Attorney's office. Belgrave listened to his taped statement; after the jury returned, he reiterated that he went inside after Talbot reached down, and saw nothing further (699-700, 703). The prosecutor then suggested that Belgrave feared appellant, and revealed that, in his statement, Belgrave had said that he saw D or Capone in the street by Talbot's car (704).

An objection was sustained and, following a sidebar discussion not summarized on the record, the prosecutor asked whether Belgrave "*remembered]* seeing D . . . in the street" when Talbot pulled up in his car, and Belgrave said, "No." (704, 707; emphasis added). Although the prosecutor had not claimed, in his opening, that Belgrave would identify appellant as the shooter, he now argued that, because Belgrave had retreated from his pretrial statements, he should be allowed to impeach Belgrave with them (707). Defense counsel responded that the prosecutor was required to demonstrate that Belgrave was hostile and that the earlier statements were made under oath. He did not argue that Belgrave's testimony failed to disprove the People's case (707-09).

The court ruled that the prosecutor could play the tapes and impeach Belgrave, but promised to instruct the jury to consider them for impeachment only (709-10). During questioning that

consumed more than 10 transcript pages, the People disclosed the *entire* contents of a prior taped and sworn statement Belgrave had made. In that statement, Belgrave said that, after Talbot pulled up, he saw D. And, as the shooting took place, he saw D holding his hands out or holding a gun, and squatting down (709-21). The only time Belgrave definitively testified that D was not present as Talbot returned in his car, was *after* the prosecutor revealed the contents of the taped statement to the jury and began impeaching Belgrave with it.

The court then permitted the prosecutor to play a tape of one of Belgrave's statements. It did not issue any limiting instruction and defense counsel did not request one (720-21). The next day, Belgrave repeated that he retreated into his building after Talbot reached under his seat and did not see D. Defense counsel later conceded that the prosecutor's impeachment was proper (839-40). The court said it would issue a limiting instruction after the prosecutor moved the tape in evidence (839, 841-43). The prosecutor, however, never formally did that and the court issued no limiting instruction whatsoever before its final charge (845-51). Trial counsel requested none.

Summations, Jury Charge, Deliberations, and Verdict

Defense counsel attacked the credibility and reliability of the People's eyewitnesses and commented upon their motives to inculpate appellant. Belgrave, counsel argued, added nothing to the People's case because his evidence was his in-court testimony, not what he might have said in a pretrial statement.

The prosecutor argued at length that his witnesses had been truthful, had no motive to lie, were not exaggerating, did not "take a pile of horse manure and [say] that it was a chocolate sundae," were not "Jack Nicholson, Denzel Washington, or Whoopi Goldberg," were not "faking" their emotions, and were not framing appellant (871-88).

Although there was no such testimony, the prosecutor also told the jurors that Belgrave and Tuten had identified appellant in a lineup "as the shooter" (882-83). Defense counsel did not object until the second time the prosecutor said that Belgrave had identified appellant in the lineup as the shooter. Then counsel sought no further corrective action and the court took none (882-84). Without objection, the prosecutor -- again including Belgrave as an identification witness -- soon misstated that "[t]hree different people in different ways identified [appellant] as the shooter" (888).

The prosecutor urged the jury to "listen to the audiotape where [Belgrave] describe[d] who he saw" shoot Rivers (884) and rely on it as evidence of guilt. He asked the jurors to compare it with Belgrave's testimony, and figure out why the "shaking" Belgrave changed his stance about appellant's involvement (884). He repeatedly posited that Tuten and Belgrave were scared of appellant and their fear and failure to exonerate him proved his guilt. Belgrave, in particular, would have "jumped out of his seat" to exonerate appellant were he innocent (885-86). Again, counsel did not object.

The court gave a standard charge on prior inconsistent statements that did not refer to the prosecutor's impeachment of Belgrave with his sworn, taped statement (916-17). Trial counsel did not request a more specific charge. During deliberations, the jury reheard the tape of Belgrave's pretrial statement (945-51, 954). The court did not issue any limiting instruction. Defense counsel did not object (945-54). The jury convicted appellant of second-degree intentional murder.

**ARGUMENTS ON WHICH THE COURT SHOULD GRANT LEAVE TO APPEAL**

**A. The Court's Failure to Issue a Timely and Explicit Limiting Instruction That Belgrave's Prior Taped Statement Could be Used Only for Impeachment and Whether This Error Presents a Question of Law Absent Objection**

C.P.L. §60.35(2) requires that "*upon receiving*" "a prior contradictory statement . . . , the court must . . . instruct the jury" that the statement was "received only for the purpose of impeaching the credibility of the witness . . . and does not constitute evidence-in-chief" (emphasis added). See People v. Goetz, 12 N.Y.2d 689 (1962); People v. Patterson, 203 A.D.2d 597, 598 (2d Dept. 1994) (court's failure to provide limiting instruction pursuant to C.P.L. §60.35[2] was prejudicial error); People v. Wilson, 195 A.D.2d 493, 494 (2d Dept. 1993) (court required to issue limiting instruction at the time the testimony is heard); People v. Carroll, 37 A.D.2d 1015, 1016-17 (3d Dept. 1971) (court must issue limiting charge even absent request). People v. Clegg, 18 A.D.2d 694 (2d Dept. 1962) (failure to issue limiting instruction was prejudicial error).

Despite the statutory command that the court immediately issue a limiting instruction specific to the prior statement, the court *never* issued any such instruction. It issued no instruction when the prosecutor conducted his impeachment. See Wilson, 195 A.D.2d at 494 (limiting instruction must be timely). It issued no instruction when the prosecutor played Belgrave's taped statement to the jury. And it issued no instruction when it permitted the prosecutor to enter the tape in evidence. By the time the jurors heard any relevant instruction at all, in the final charge, Belgrave's taped statement had long since been ingrained upon their collective memory. Even then, the court issued only a general instruction that did not even specifically mention the tape recording of Belgrave's prior statement. As a result, the jury evidently relied on the tape as evidence-in-chief; during deliberations, it requested to rehear only the tape and not the testimony of Belgrave or other witnesses. Despite this, the court did not even then tell the jury of the very limited purpose for which it could use the tape.

The Appellate Division rejected appellant's claim of instruction error for two reasons. It held that the court's untimely general instruction "was adequate." People v. Jones, 2006 W.L. 205002*1 (2d Dept., Jan. 24, 2006). It also held that the claim of error was unpreserved. Id.

The Appellate Division's holding that the court's untimely, general instruction, issued only in the final charge, was adequate, is inconsistent with the plain language of C.P.L. §60.35 and seems at odds with prior Appellate Division cases, as well. See, e.g., People v. Daniels, 213 A.D.2d 419 (2d Dept. 1995); Patterson, 203 A.D.2d at 598; Wilson, 195 A.D.2d at 494. In its two major

pronouncements on the statute, People v. Fitzpatrick, 40 N.Y.2d 44 (1976) and People v. Russ, 79 N.Y.2d 173 (1992), this Court dealt only with the requirement that a party's witness's testimony must tend to disprove the party's case before impeachment with a prior statement will be permitted. It has never addressed whether the instruction required by C.P.L. §60.35 must specifically refer to that statement and be issued at or about the time it is revealed to the jury. Moreover, the three cases upon which the Court relied did not support its holding. In all of the cases, the trial court's charge was specific and repeated. One of the decisions, People v. Bass, 255 A.D.2d 689 (3d Dept. 1998), also specifically recited that the court issued an explicit instruction immediately upon admission of the prior inconsistent statement.

The Second Department also held that the instruction issue was unpreserved for review because counsel did not request the instruction. But that holding, as well, is at apparent odds with the Court's own prior cases and Third Department holdings. In Wilson, 195 A.D.2d at 494, the Second Department reversed a conviction on the law alone, when the trial court, among other things, "fail[ed] to instruct the jury, at the time that the testimony was heard, that it was to be used for impeachment purposes only." And in Carroll, 37 A.D.2d at 1016-17, the Third Department held that the instruction required by C.P.L. §60.35 is mandatory and must be given even absent request. See also Clegg, 18 A.D.2d at 694 (receipt of hearsay led to reversal in the interest of justice and "failure" to issue limiting instruction as to prior signed statement led to apparent reversal on the law). If the Third Department is correct that a court must, even absent request, give a limiting instruction as to prior statements covered by C.P.L. §60.35, this necessarily suggests that a court's failure to comply presents an issue of law even absent protest. Since this issue is likely to recur frequently, this Court should review it.

**B. Counsel's Ineffectiveness: His Failure to Object to the People's Improper Impeachment, Request Any Limiting Instructions, or Protest the People's Use of Impeachment Evidence as Evidence-in-Chief and His Other Substandard Handling of the Identification Issue**

This case also presents a compelling ineffective assistance of counsel issue. This case turned on the People's proof of appellant's identity as the man who shot Rivers. Yet, in every phase of the trial, and every step of the way, counsel blundered, permitting the People to solidify their proof of identity, although their two eyewitnesses were plainly unpalatable and lacked credibility.

Decades ago, this Court held that a criminal defendant has the right to representation by counsel who is prepared on the law. People v. Droz, 39 N.Y.2d 457, 462-63 (1976) (counsel's misapprehension that defendant's later withdrawn guilty plea was admissible factored into his ineffectiveness); People v. LaBree, 34 N.Y.2d 257 (1975). Thus, when a prejudicial decision is affected by a misapprehension about the law, counsel may not hide behind the rubric of "strategy." Strickland v. Washington, 466 U.S. at 668, 688-89, 691 (1984); See also People v. Daley, 172 A.D.2d 619 (2d Dept. 1991) (attorney unfamiliar with the law on alibi defenses, so he ineffectively failed to raise such a defense). At bar, counsel was ineffective largely because many of his errors were the result of his unfamiliarity with the law.

Counsel's Ineffective Performance in Connection With Belgrave's Impeachment

Throughout the trial, counsel's defense centered upon attacking the People's proof of identity and raising reasonable doubt whether appellant was the shooter. Despite this, the record shows that counsel was woefully unprepared on the preeminent evidentiary issue in the case, an issue counsel could anticipate would arise.

C.P.L. §60.35(1) provides that, in a criminal action, a party may impeach his own witness with a prior sworn statement only when the witness "gives testimony upon a material issue of the case *which tends to disprove the position of such party*" (emphasis supplied), such party may introduce evidence that the witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony (emphasis added). Accord People v. Fitzpatrick, 40 N.Y.2d 44 (1976). However, a prior inconsistent statement used for impeachment under the statute "may be received only for the purpose of impeaching the credibility of the witness with respect to his testimony upon the subject, and does not constitute evidence in chief," and "[u]pon receiving such evidence . . . , the court must so instruct the jury. C.P.L. §60.35(2). Moreover, if the witness's trial testimony "does not tend to disprove the position of the party who called him," the prior statement may not be revealed to the jury. C.P.L. §60.35(3). Accord People v. Russ, 79 N.Y.2d 173 (1992).

This Court has held that neutral testimony, such as that a witness did not recall the critical events, does may not be the basis for impeachment under C.P.L. §60.35. Fitzpatrick, 40 N.Y.2d at 50-52. Moreover, it has long been the rule that a witness's testimony that he or she was not present or did not see the crime, and therefore cannot say who committed it, does not justify impeachment. E.g., People v. Andre, 185 A.D.2d 276 (2d Dept. 1992) (witness who previously identified defendant testified that he did not witness the shooting); People v. Comer, 146 A.D.2d 794 (2d Dept. 1989) (witness who previously identified defendant testified he did not know who shot victim because he was in the bathroom during the incident); People v. Dann, 100 A.D.2d 909, 912 (2d Dept. 1984) (witness who had previously identified defendant as a driver in a fatal drag race testified that he did not know who was in the car).

Counsel's vigorous objection to the impeachment and the taped statement showed that he understood the importance of the evidence and that his strategy was to oppose it. Yet, although the potential impeachment use of Belgrave's prior statement was the single most important legal issue in the case, defense counsel was oblivious to the law.

Given counsel's obvious desire to bar the impeachment, his failure to take readily available steps to prevent it and mitigate its impact can be explained only by his ignorance of the relevant law. See People v. Turner, 5 N.Y.3d 476, 481-84 (2005). Moreover, having stated the wrong ground for objection, counsel never requested the limiting charge that C.P.L. §60.35 *mandated* even for impeachment *properly* undertaken.

Defense counsel's failure to be familiar with the law prejudiced appellant throughout the trial. In summation, the People persistently invited the jury to use the impeachment evidence as evidence in chief and counsel protested almost not at all. The prosecutor repeatedly and improperly argued that *three* witnesses had identified appellant as the shooter when only the fragile Talbot and Tuten had done so (882-84, 888). He invited the jury to listen to Belgrave's taped statement to learn what had happened on the day of the incident. And he urged the jury to infer, from Belgrave's taped statement and his asserted "shaking" in court, that Belgrave saw appellant shoot Rivers but changed his story because he feared appellant (882-84, 886, 888). Yet, counsel did not object.

Finally, when the court issued its general charge on prior inconsistent statements, counsel did not ask the court to specifically address Belgrave's prior statement. Even after the jury requested to rehear the tape alone, thereby signaling that it intended to rely on the taped statement as evidence in chief, counsel did nothing.

Serious errors of the kind defense counsel committed here have led to reversals in several recent cases. For example, in People v. Montgomery, 22 A.D.3d 960 (3d Dept. 2005), defense counsel failed to object to improper impeachment evidence in the form of a prior inconsistent statement and failed to request explicit limiting instructions either when the evidence was elicited, when the prosecutor cited it in summation as the "most truthful" version of the facts, or when the court gave its final charge. Given this, the court declared that "[d]efense counsel's representation was deficient," and reversed in the interest of justice. See also People v. Greene, 306 A.D.2d 639 (3d Dept. 2003) (court failed to issue limiting instructions in connection with "prior bad acts" testimony; defense counsel failed to request instructions or object to court's failure to issue any); People v. Langlois, 265 A.D.2d 683 (3d Dept. 1989) (in sex crime case, trial counsel was ineffective in failing to request Sandoval hearing regarding prior bad acts of sexual misconduct or seek limiting instructions).

Defense Counsel's Failure to Protest the People's Repeated Inferential Bolstering and Summation Misconduct

Defense counsel's additional errors were thematic; most of them went to the heart of the case, the People's proof of identity. Four times during the trial, the prosecutor impermissibly suggested, via his police witnesses, that Belgrave had identified appellant as the shooter. In his opening statement, he announced that the police began seeking appellant promptly after speaking with eyewitnesses on the day of the shooting. Then he improperly elicited from two detectives that the "next step" the police took after speaking with witnesses Belgrave, Holland, and Talbot soon after the shooting was to search for appellant (630, 794). See People v. Holt, 67 N.Y.2d 819, 820 (1986); People v. Veal, 158 A.D.2d 633, 634 (2d Dept. 1990); People v. Cobb, 104 A.D.2d 656 (2d Dept. 1984) (improper bolstering when, in opening statement, prosecutor told jury that an officer would testify that the complainant identified defendant, and he then elicited that testimony from the officer).

The prosecutor then improperly suggested that Belgrave had identified appellant a fourth time when he elicited, from one detective that, in conducting a lineup, he asked Belgrave whether he

recognized anyone, then "What number do you recognize?", and "Where do you recognize the person from?", and Belgrave responded to each question (815-16). Given the prosecutor's improper impeachment of Belgrave and the inferential hearsay he had previously elicited from the police, this additional questioning could only have further signaled that Belgrave had identified appellant as the shooter, this time at the lineup. This implied recital of Belgrave's out-of-court, hearsay identification of appellant was improper. See C.P.L. §60.25(1)(a)(iii), (b); People v. Trowbridge, 305 N.Y. 471, 477 (1953); People v. Bacenet, 297 A.D.2d 817, 818 (2d Dept. 2002). See also Ryan v. Miller, 303 F.3d 231, 248 (2d Cir. 2002); Mason v. Scully, 16 F.3d 38, 42-43 (2d Cir. 1994).

Defense Counsel Failed to Protect Appellant From the Prosecutor's Remaining Summation Misconduct, With Which He Misstated the Strength of His Identity Case and Elicited Sympathy for His Identity Witnesses and Bolstered Their Suspect Credibility

Virtually unimpeded by defense counsel, the prosecutor reinforced Belgrave's status as an identification witness in other ways. First, he misstated that Belgrave had identified appellant "in a lineup as the shooter," although the trial testimony was that Belgrave had identified him only as the man who fought with Talbot (882-83). When defense counsel did not object, the emboldened prosecutor repeated that Belgrave had identified appellant, at the lineup, as the shooter.

It is improper for a prosecutor to argue on the basis of facts not in evidence. People v. Duncan, 13 N.Y.2d 37 (1963). It also improper for a prosecutor to misstate the evidence. See People v. Brown, 125 A.D.2d 321 (2d Dept. 1986). Thus, the prosecutor committed serious error in misstating Belgrave's testimony. Moreover, by arguing identifications that Belgrave never said he made, the prosecutor, for a fifth time, impermissibly suggested that Belgrave had identified appellant. See People v. Cobb, 104 A.D.2d 656 (2d Dept. 1984) (prosecutor's opening statement disclosure that an officer would testify that the complainant identified defendant constituted improper bolstering).

Unhindered by objections, the prosecutor shifted his burden of proof and repeatedly vouched for his witnesses. He rhetorically asked why Talbot "would come in here and [accuse appellant]" if he "wasn't the guy who [had] killed [Talbot's] friend and if this defendant didn't [shoot Rivers], why are his friends coming in here . . . and identifying him as the shooter" (872, 887). See People v. Bull, 218 A.D.2d 663, 665 (2d Dept. 1995); People v. DeJesus, 137 A.D.2d 761, 762 (2d Dept. 1988).

The prosecutor further erred in suggesting, contrary to the record, that Tuten, one of his key witnesses, was appellant's "friend," thereby strengthening her identification of appellant and suggesting she had no motive to lie. Yet, this argument was not legitimately drawn from the record. See People v. Ashwal, 39 N.Y.2d 105 (1976). The prosecutor also vouched for his witnesses assuring the jury that they had no "motivation" to lie and were "telling the truth" and "not exaggerating" (872-78). Nor were his witnesses, one of whom had apparently cried on the stand, faking their emotions, since they were incapable of acting. See People v. Robinson, 260 A.D.2d 508 (2d Dept. 1999).

Without virtually no protest from defense counsel, the prosecutor also repeatedly and improperly inflamed the jury's passions against appellant and elicited sympathy for his witnesses by suggested that they feared appellant. People v. Whalen, 59 N.Y.2d 273, 280-81 (1983); People v. Duncan, 13 N.Y.2d 37 (1963); People v. Norton, 164 A.D.2d 343, 356 (1st Dept. 1990), aff'd, 79 N.Y.2d 808 (1991). What is more, the prosecutor inappropriately argued that fear proved his case. He argued that Belgrave's "fearful" equivocation proved appellant's guilt and that Tuten and Belgrave were afraid because they saw appellant commit the shooting. Defense counsel did not object.

Defense counsel's errors pervaded the entire trial. They began no later than during the prosecutor's opening statement and continued through the court's charge. Moreover, they went to the heart of the case, the People's proof of identity, and turned the People's weak point into a strong point. Appellant was denied his right to the effective assistance of counsel under both the federal and state constitutions. U.S. Const., Amends. VI, XIV; N.Y. Const., Art. 1, §6; Turner, 5 N.Y.2d at 476 (failure to object, on correct grounds, to submission of lesser included offense); Quartararo v. Fogg, 679 F. Supp. 212, 240-42 (E.D.N.Y.), aff'd, 849 F.2d 1467 (2d Cir. 1988) (failure to object to hearsay and implied hearsay accusations of guilt and summation misuse of hearsay).

In light of the Appellate Division's cavalier rejection of appellant's ineffective assistance claim as without merit, I respectfully submit that this case presents an ideal vehicle for the Court to revisit and reemphasize the need for adequate legal investigation by counsel. This case also presents an excellent opportunity for the Court to concretely distinguish between the federal standard for evaluating claims of ineffectiveness, which requires a showing of prejudice, and the state standard, which does not. Even were it true, as the People argued below, that appellant could not show prejudice within the meaning of Strickland, 466 U.S. at 668 -- and they wrongly argued that only by proving prejudice could appellant prove ineffectiveness (Respondent's Appellate Division Brief, at 29) -- the state standard for evaluating claims of ineffectiveness does not require that showing. See, e.g., Turner, 5 N.Y.3d at 476. In blundering on the main issue of identification, from start to finish, counsel's representation could not have been meaningful. This case provides the Court an excellent opportunity to show how the application of the New York standard for measuring ineffectiveness is actually more lenient than the federal standard and to mute recent criticism from the federal courts that the state standard actually violates Strickland. 466 U.S. at 668. See Henry v. Poole, 409 F.3d 48, 70-71 (2d Cir. 2005) ("we find it difficult to view so much of the New York rule as holds that 'whether defendant would have been acquitted of the charges but for counsel's errors is ... not dispositive,' [citation omitted] . . . , as not "contrary to" the prejudice standard established by Strickland").

Finally, this Court's guidance is required in connection with the requirements of C.P.L. §60.35, the primary matter underlying appellant's ineffectiveness claims. The issues raised by that statute recur frequently in the lower courts. This Court has never addressed what is a sufficient instruction under subdivision 2 of the statute. And counsel are fumbling the ball with increasing frequency. Aside from this case, we have identified at least three other recent reported cases in which counsel have failed to understand and avail their clients of the benefits of C.P.L. §60.35. See People v. Montgomery, 22 A.D.3d 960 (3d Dept. 2005) (counsel failed to object to use of a prior inconsistent

statement or request timely, explicit limiting instructions; Court declared that "[d]efense counsel's representation was deficient"); People v. Solomon, 16 A.D.3d 701 (2d Dept. 2005) (counsel's errors in failing to object to impeachment with prior inconsistent statement or request limiting instructions did not render him ineffective); People v. Gueits, 10 A.D.3d 732 (2d Dept. 2004) (see appellant's brief). See also People v. Dowdall, 236 A.D.2d 836 (4th Dept. 1997) (prosecutor improperly impeached his own witnesses with prior statements and made improper summation comments regarding the impeachment; reversal in the interest of justice despite failure to object).

Court of Appeals Jurisdiction

Whether a court's failure to issue the limiting instruction required by C.P.L. §60.35 presents an issue of law even absent protest or a request for it is one of the issues presented for review. Appellant's ineffectiveness claim does not require preservation. Nonetheless, we have enclosed copies of the portion of the transcript dealing with Belgrave's impeachment.

In sum, we respectfully urge that leave be granted to appeal for the reasons stated here and in our Appellate Division brief.[1] I respectfully request a hearing on this application. If there is any further information I may provide, I would be happy to do so.

Respectfully yours,

WARREN S. LANDAU
Staff Attorney

WL:lsw
encls.
cc: Hon. Charles J. Hynes, District Attorney, Kings County, Renaissance Plaza, 350 Jay Street, Brooklyn, NY 11201-2908, 718-250-2000, ATT: Appeals Bureau, ADA Cynthia Kean, Esq.

---

[1] We also continue our request that this Court review all issues outlined in appellant's briefs, including the federal and state constitutional issues outlined at pages 2-3 (issues), 3-25 (statement of facts), and 25-58 (argument) of his main brief and pages 2 and 4-12 of his supplemental pro se brief (main brief: due process relating to prosecutor's improper impeachment, bolstering, and summation misstatements and misuse of evidence, and court's failure to give a timely, clear charge on impeachment evidence; due process relating to prosecution summation - burden-shifting, vouching, and other summation misconduct; and ineffective assistance of counsel relating to counsel's failure to object to evidentiary offers and urge proper grounds for objections, failure to request appropriate instructions, and failure to object to prosecution summation misconduct [U.S. Const, Amends. VI, XIV; N.Y. Const., Art. I, §6]; supplemental pro se brief: confrontation violation [U.S. Const., Amends. VI, XIV; N.Y. Const., Art. I, §6]).

Bethel Jones, #03-a-4635
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821-005

April 12, 2006

Hon. George Bundy Smith
Judge of the Court of Appeals
Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York 12207

Exhibit 'C'

Re: People v. Bethel Jones
AD No. 03-08030
Kings. Ind. No. 83/74/02
AA No. 2449

**ADDENDUM**

Your Honor:

Please accept the fact that I am layman, absent the necessary tools (legally) to express my contentions. However, I do possess a modicum ability of common sense and can express a complete thought. I respectfully request, that any errors detected that does not affect the substantial rights of either party, be overlooked and judged prudently.

Pursuant to the Criminal Procedural Law, Section 460.20 Petitioner's Appellate Counsel (Warren S. Landau) submitted an application to the Court of Appeals, March 31, 2006. I asked appellate counsel to include (ineffective trial counsel), since he was raising ineffective trial counsel in his main brief. Appellate counsel said he would allude to said issue in a footnote, I do not believe that is appropriate. So, it is necessary that I protect my rights as best as I know how.

Trial defense counsel's performance fell below constitutional standard of competence for affective assistance of counsel by failing to object to state's obvious violation of defendant's confrontation clause rights from rights from use of hearsay statements of non-testifying witnesses, through detectives, (see, Petitioner's Pro se, supplemental brief) for facts and law supporting this issue. U.S.C.A. Const. Amend. 6.

Again, I asked appellate counsel to raise the twin-count indictment of "intentional murder and depraved indifference murder" to the jury for deliberation. That trial counsel was ineffective for not objecting. As I understand __People v. Payne__, 3NY2d 266 (2004), and __People v. Suarez,__ 2005 N.Y. LEXIS 3431 (2005), where the court stated; so called "twin-count" indictments where intentional and depraved murder should be rare, and twin count submissions should be even rarer. In other words, __**Prosecutors**__ should generally make a choice at the outset whether to pursue intentional or depraved indifference murder, and when they do not, the __Judge__ should act as a (gatekeeper), and generally permit only one of the counts to go to the jury.

Again, because I am a layman and ignorant to the true language of jurisprudence, I asked appellate counsel for guidance on these issues (see, letter enclosed dated; March 24, 2006). A perusal of appellate counsel's letter manifest ambiguity. As the prosecutor pointed out in his summation to the jury, "take your pick" intentional or depraved indifference murder, there is even more evidence for depraved indifference murder.

Petitioner respectfully request (1) what was the status of the law at the time of petitioner's conviction; (2) had the law changed at the time of petitioner's direct appeal; (3) if so, is the new law to be applied retroactively to petitioner's direct appeal? I believe said issues can be raised to this court pursuant the CPL. Section 470.35(1). That issues of this magnitude can be briefed and addressed by this Most Honorable Court, for the first time, as long as the record supports said contentions.

To: Hon Cynthia Kean, Esq., (1) Copy
ATT: Appeals Bureau
Kings County
Renaissance Plaza
350 Jay Street
Brooklyn, NY 11201-2908

Enclosure(1 letter, March 24, 2006)

Appellate Counsel (1) copy

The Court of Appeals (1) original and (1) copy

Respectfully submitted,

MR. B. JONES

# State of New York
# Court of Appeals

Exhibit "D"

BEFORE: HON. GEORGE BUNDY SMITH, Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK

Respondent,

against

BETHEL JONES,

Appellant.

CERTIFICATE DENYING LEAVE

I, GEORGE BUNDY SMITH, Associate Judge of the Court of Appeals of the State of New York, do hereby certify that upon application timely made by the above-named appellant for a certificate pursuant to CPL 460.20 and upon the record and proceedings herein,* there is no question of law presented which ought to be reviewed by the Court of Appeals and permission to appeal is hereby denied.

Dated at Albany, New York
June 5, 2006

George Bundy Smith
Associate Judge

*Order of the Appellate Division, Second Department, entered January 24, 2006, affirming a judgment of the Supreme Court, Kings County, rendered August 14, 2003.

*Description of Order:

**OFFICE OF THE DISTRICT ATTORNEY, KINGS COUNTY**

**RENAISSANCE PLAZA at 350 JAY STREET**
**BROOKLYN, N.Y. 11201-2908**
**(718) 250-3137**

Exhibit "E"

CHARLES J. HYNES
*District Attorney*

Stephen J. Murphy
*Senior Assistant District Attorney*
*Homicide Bureau*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 18

---------------------------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK

-against-

WITNESSES RECORD OF CONVICTION

BETHEL JONES
Defendant.

Indictment No.
8374/2002

---------------------------------------------------------------x

| ARREST DATE | IND. # | DISPOSITION | SENTENCE |
|---|---|---|---|
| MICHAEL TALBOT | | | |
| 11/11/1992 | 92K061541 | CPCS 7TH DEG. | COND. DIS. |
| 3/29/1995 | 2307/1995 (BX) | ATT. CSCS 3RD DEG. | 1 YEAR JAIL |
| 3/1/1997 | 2437/1997 (BK) | PETIT LARCENY | 3 YRS PROB. |
| 11/02/2000 | 2000KN085973 (BK) | CPCS 7TH DEG. | 10 DAYS JAIL |
| MARTHA TUTEN | | | |
| 11/18/2002 | 2002KN073173 | DIS. CON | CD AND 2 DAYS OF COMM. SERV. |
| MARLON BELGRAVE | | | |
| 5/9/2002 | 2002KN029417 | CP MARIJ. 5TH | TIME SERVED |
| 6/6/2002 | 2002KN035820 | CPCS 7TH | 10 DAYS JAIL |
| ROBERT HOLLAND | | | |
| 5/18/2001 | 2001KN0210919 | ATT/CPW 4TH | TIME SERVED |
| DATHRESS HOLLAND | | | |
| 11/8/1994 | 13825/1994 | ATT. ROB 1 | 1 ½ - 4 ½ YRS |
| 5/18/2001 | 2001KN040883 | CPCS 7TH | CD |
| 4/27/2002 | 2002KN026757 | CPCS 7TH | CD |
| 10/10/2002 | 2002KN066248 | CPCS 7TH | CD |

Exhibit E



beef. He shot and killed this kid just because he had the nerve to come back with Michael Talbot. So uncaring and callous. Think about it, uncaring, callous, he snuck up on him from behind. He didn't even confront him face to face. He shot him in the back of the head. It doesn't get any more depraved than that.

So take your pick. You want to find him guilty of intentional murder, the evidence is there. You want to find him guilty of depraved indifference murder, the evidence is more than there. It shouldn't go any further than that.

Don't compromise your oath as jurors. Decide the case on the evidence, without sympathy. Decide the case based on the evidence you heard and there will be no doubt, not reasonable doubt, no doubt this defendant is guilty.

Come back with a verdict, come back with a verdict that's fair, fair based on the evidence. Come back with a verdict that's consistent with the evidence. Come back with a verdict that's just. Return justice to this courtroom. Come back and hold this defendant accountable for what he did that night. It's not okay just to fire shots into a car. Hold him responsible for his actions. Find him guilty. Find him guilty not because I say so, because the evidence compels you to do

Exhibit G



officer. When you resume deliberations the exhibits will be returned to you.

In order to reach a verdict all members of the jury must agree. Your verdict must be unanimous. Whenever all members are in agreement on a verdict you must report your verdict to the Court. When you reached a verdict simply tell the court officer you have reached a verdict and you will be promptly called back into the courtroom to announce your verdict.

To assist you during your final deliberations I have prepared a written list called a verdict sheet which states the specific charges submitted to you for your final determination. The verdict sheet lists the options or choices, after careful consideration of all the evidence, in accordance with the Court's instructions and further provides a column for your foreperson to record your verdict as to the charges submitted to you.

The verdict sheet lists five charges. The first two counts on your verdict sheet contain two charges of Murder in the Second Degree. They allege two different types or theories of Murder in the Second Degree; one is called intentional murder, the other is called depraved indifference murder.

You will consider both of these charges. To help you remember which is which I have noted a