UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

BETHEL JONES,

        Petitioner,

-against-

ROBERT K. WOODS,

        Respondent.

---------------------------------------------------------------X

NOT FOR PUBLICATION

MEMORANDUM AND ORDER

07 CV 1326 (CBA)

AMON, United States District Judge:

On March 23, 2007, petitioner Bethel Jones filed his pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. Jones claims he was denied effective assistance of counsel for the following alleged errors of trial counsel: (1) failure to object to hearsay statements made during a pretrial hearing and at trial in violation of Crawford v. Washington; (2) failure to object to the charges of both intentional and depraved indifference murder being submitted to the jury; (3) failure to object to the prosecutor's improper impeachment of its own witness; and (4) failure to object to the prosecutor's summation. For the reasons stated herein, the Court denies Jones' petition.

I. Background

According to the evidence presented at trial, in the early morning hours of July 10, 2002, outside of 1750 Prospect Place, in Brooklyn, New York, Jones and Michael Talbot got into a fight over a street game of dice. Talbot broke free from the fight, went to his car and left the scene purportedly to get a gun. Talbot and his friend Taquan Rivers returned in Talbot's car, without a gun, to 1750 Prospect Place. The People offered testimony from Talbot and Martha

1

Tuten establishing that upon Talbot's return to the scene of the street fight, Jones ran out to Talbot's car and fired three to four gunshots into the passenger side of the car, killing Rivers. Jones was convicted of Murder in the Second Degree and sentenced to a term of imprisonment of twenty years to life.

Jones appealed his conviction to the Appellate Division of New York State Supreme Court, Second Department ("Appellate Division"). On January 24, 2006, the Appellate Division unanimously rejected Jones' claims and affirmed the conviction. People v. Jones, 25 A.D.3d 724 (2d Dep't 2006). Jones then sought leave to appeal to the New York State Court of Appeals, which the Court of Appeals denied by order dated June 5, 2006. People v. Jones, 7 N.Y.3d 757 (2006).

## II. Discussion

### A. Exhaustion and Procedural Bars

#### 1. Two Ineffective Assistance of Counsel Claims Barred

Respondent claims that two of Jones' ineffective assistance of counsel claims are procedurally barred from habeas review because they were not raised in the direct appeal to the Appellate Division. The first is Jones' claim that trial counsel was ineffective for failing to object to hearsay statements made during a pretrial hearing and at trial in violation of Crawford v. Washington, 541 U.S. 36 (2004). Second is Jones' claim that trial counsel was ineffective for failure to object to the "twin count" jury charge of both intentional and depraved indifference murder.

Respondent is correct that Jones failed to address these two ineffective assistance of counsel claims in his direct appeal to the Appellate Division. In his brief to the Appellate

Division, petitioner's counsel alleged that "appellant was denied effective assistance of counsel when his trial attorney failed to protect him from the People's improper impeachment of a neutral prosecution witness, failed to timely request instructions limiting use of the witness's prior statement, failed to object to the prosecutor's inferential hearsay, and failed to protest the prosecutor's pervasive summation misconduct." (Pet. Br. to Appellate Division, 52.) In his pro se supplemental brief, Jones also claimed that the prosecutor improperly introduced hearsay statements at trial in violation of Crawford v. Washington, but he did not argue that counsel was ineffective for failing to object to their admission.

A state petitioner must exhaust state court remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991). State remedies are considered exhausted when a petitioner has: "(i) presented the federal constitutional claim asserted in the petition to the highest state court... and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." Ramirez v. Attorney General of State of New York, 280 F.3d 87, 94 (2d Cir. 2001). A federal district court may, in its discretion, deny on the merits habeas petitions containing unexhausted claims, or "mixed petitions." See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

In opposing Jones' petition for habeas relief, respondent argues that this Court "should deem those parts of the claim exhausted, but deny them on the ground that they are procedurally barred by defendant's state procedural default." (Resp. Br. 2.) Even "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his

claims in order to meet the exhaustion requirement would now find the claims procedurally barred[, then]. . . there is a procedural default for purposes of federal habeas. . . . " Coleman, 501 U.S. at 735 n.1; Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994), cert. denied 514 U.S. 1054 (1995). In this case, both of these claims are based on matters that appear on the record and could have been raised on direct appeal. Because Jones has already taken his one appeal as a matter of right, he no longer has a forum in state court to raise these claims. See N.Y. Court Rules § 500.10(a) (only one application for leave to appeal to the New York Court of Appeals is permitted). Although the two ineffective assistance of counsel claims not asserted to the Appellate Division may be considered exhausted, consideration of the merits is procedurally barred. See N.Y. Crim. Proc. Law § 440.10(2)(c) (barring review if a claim could have been raised on direct review). Jones cannot escape the consequences of this default because he has not shown cause for and prejudice resulting from the default or a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Moreover, for the reasons that follow if this Court were to reach the merits of these two claims, they would fail.

    2.    Alternative Merits Discussion

        a.    Crawford Claim

The Court turns first to the merits of Jones' claim that counsel was ineffective for failing to object to hearsay statements at the May 19, 2003 pretrial Wade hearing[1] and at trial in violation of Crawford v. Washington, 541 U.S. 36 (2004). The alleged hearsay statements refer

---

[1] A court conducts a Wade hearing in order to determine "whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." Twitty v. Smith, 614 F.2d 325, 333 (2d Cir. 1979) (citing United States v. Wade, 388 U.S. 218, 242 (1967)).

to the testimony of Detectives Robert Fragoletti and Leonard Cocco, who testified at both the Wade hearing and at trial. Jones also claims that his Confrontation Clause rights were violated because he was denied the opportunity to call witnesses at the Wade hearing. (Pet. Br. 34.)

To prevail on an ineffective assistance of counsel claim, a defendant must show: (1) counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms," and (2) "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). In assessing the reasonableness of counsel's performance on the first Strickland prong, "judicial scrutiny of counsel's performance must be highly deferential," and the reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. Counsel's conduct is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687; see also Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir. 2003). To satisfy the prejudice prong, the defendant must show a reasonable probability "sufficient to undermine confidence in the outcome" of the trial or proceeding. Strickland, 466 U.S. at 687. Counsel's actions were neither unreasonable nor was there any prejudice because the objections Jones complained were not made were meritless.

Jones cannot prevail on this claim because he has failed to demonstrate a substantive violation of the Confrontation Clause. The Confrontation Clause has been referred to as a trial right. See, e.g., Barber v. Page, 390 U.S. 719, 725 (1968); California v. Green, 399 U.S. 149,

157 (1970). Jones cites to no case that has applied this right to pretrial identification proceedings. In any event, because Jones had the "opportunity for full and effective cross-examinations" of the identifying witnesses at his trial, his rights under the Confrontation Clause were not violated by the hearsay accounts of the witness identification at the pretrial proceeding. Kentucky v. Stincer, 482 U.S. 730, 744 (1987) (finding that defendant's Confrontation Clause rights were not violated by his exclusion from a pretrial competency hearing because he had the opportunity for full and effective cross-examination of the two witnesses during trial).

Crawford was not triggered at trial. Detective Fragoletti testified he went looking for Jones after interviewing Talbot and Belgrave (Tr. 630), and Detective Cocco testified that he searched for Jones after the interviews of Talbot, Belgrave and Robert Holland. (Tr. 793-94.) Crawford does not apply because the detectives did not testify to the substance of these interviews. The detectives' references to these witnesses' statements were not being offered for their truth. See Crawford, 541 U.S. at 1369 n.9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); see also Wisdom v. Graham, 2008 WL 1924930 (N.D.N.Y. Apr. 29, 2008) (no implication of petitioner's Confrontation Clause rights where officer's trial testimony was not offered to prove the alleged shooting, but to explain the course of police conduct and provide a context for the subsequent events); Summerville v. Conway, 2008 WL 3165850 (E.D.N.Y. Aug. 6, 2008) (no Confrontation Clause violation where detective testified about interviews with various individuals, but no specifics of what was said to him were revealed, except that cumulatively it led him to investigate and ultimately apprehend the defendant). In any event, any Confrontation problems that may have arisen from the suggestion that these witnesses implicated Jones were

ameliorated by the fact that Talbot, Belgrave and Holgrave all testified at trial and were subject to cross examination.

Accordingly, since there was no <u>Crawford</u> violation at the <u>Wade</u> hearing or at trial, Jones' claim of counsel's deficient performance on this ground fails.

      b.    <u>Failure to Object to the Jury Instruction</u>

Jones' second unexhausted claim—that counsel was deficient for failing to object to the court's charging both intentional and depraved indifference murder to the jury—is also meritless. Under New York law, a trial court can properly submit both intentional murder and depraved indifference murder to a jury if "a verdict of guilty upon either would be supported by legally sufficient trial evidence." N.Y. Crim. Pro. Law § 300.40(5). In such circumstances, "the court submit[s] both counts in the alternative and authorize[s] the jury to convict upon its findings of fact." <u>Id.</u> Because it is logically inconsistent for one to simultaneously act intentionally and with depraved indifference, "the court must direct the jury that if it renders a verdict of guilty upon one such count it must render a verdict of not guilty upon the other." <u>Id.</u>

The trial judge properly instructed the jury regarding the two murder charges:

> The verdict sheet contain[s] two charges of Murder in the Second Degree. They allege two different types or theories of Murder in the Second Degree; one is called intentional murder, the other is called depraved indifference murder. . . . You may find the defendant not guilty of both charges of Murder in the Second Degree. You may find the defendant guilty of one of the charges of Murder in the Second Degree and not guilty of the other charge of Murder in the Second Degree. You may not find him guilty of both charges of Murder in the Second Degree. The reason for this is that according to the law a person cannot act both intentionally and recklessly regarding the death of the same person.

(Tr. 937-38.) Thus, defense counsel was not ineffective for failing to object to the jury charge.

**B.    Review of State Court Adjudications on the Merits Under AEDPA**

7

The remaining four of Jones' ineffective assistance of counsel claims were raised in his main brief to the Appellate Division and were rejected by the Appellate Division on the merits. See People v. Jones, 25 A.D.3d 724, 725-26 (2d Dep't 2006) ("The defendant was not deprived of the effective assistance of counsel."). Because the Appellate Division adjudicated these ineffective assistance of counsel claims on the merits, this Court reviews the state court's decision under the deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

AEDPA has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. Under AEDPA, a federal district court may grant a writ of habeas corpus to a state prisoner on a claim that "was adjudicated on the merits in State court proceedings" only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d) have independent meaning. Bell v. Cone, 535 U.S. 685, 694 (2002). A federal district court may issue a writ for habeas corpus under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A district court may also grant habeas relief under the "unreasonable application" clause "if the state court correctly

8

identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

In interpreting Williams, the Second Circuit has stated that the "unreasonable application" standard "falls somewhere between merely erroneous and unreasonable to all reasonable jurists. . . . Although some increment of incorrectness beyond error is required, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) (internal quotation marks and citations omitted). With these standards in mind, the Court now turns to the remaining ineffective assistance claims.

1. Failure to Properly Object to Impeachment Evidence

At trial before the New York Supreme Court, prosecution witness Marlon Belgrave testified that he did not see Jones at the scene just before the shooting and did not see the shooting take place. (Tr. 694-95.) Thereafter, the prosecutor began laying the foundation to impeach Belgrave with a prior sworn statement that Belgrave had given to the Assistant District Attorney ("ADA") on July 10, 2002 after the crime. (Tr. 703-04.) Out of the presence of the jury, Belgrave listened to the tape of the statement in which he said he remembered seeing Jones at the scene of the crime, outside of 1750 Prospect Street. (Tr. 699.) Upon the jury's return and during continued direct examination, Belgrave restated he had not seen Jones at the scene of the crime nor witnessed the shooting. (Tr. 703-06.) The prosecutor then argued to the trial judge that he was entitled to impeach Belgrave with the prior statements because they were "materially different" from what Belgrave had testified to on direct. (Tr. 707.) Trial counsel objected that in order to impeach his own witness, the prosecutor had to show Belgrave was a hostile witness and

9

that the prior statement had been made under oath. (Tr. 707-09.) Ultimately, defense counsel lost the argument; the trial judge allowed the prosecutor to impeach Belgrave and promised to give a limiting instruction regarding the jury's use of the prior statements as impeachment evidence only. (Tr. 709.) The tape was played, but was not formally admitted into evidence, and the trial judge gave no contemporaneous limiting instruction. An instruction was given about the proper use of impeachment testimony in the court's closing instruction.

Jones argues that defense counsel's failure to object to the prosecutor's impeachment of his own witness constituted ineffective assistance of counsel. The Appellate Division, in its Decision and Order of January 6, 2006, ruled that the impeachment of the prosecutor's witness was proper. People v. Jones, 25 A.D.3d 724, 725-26 (2d Dep't 2006).

Under New York law, a party in a criminal case can impeach his own witness with prior inconsistent statements that were given under oath. New York Crim. Pro. Law § 60.35(1). However, the prior statement must "tend to disprove the position of the party who called [the witness] and elicited such testimony." Id. § 60.35(2). Additionally, the trial judge must instruct the jury that evidence received under the statute must be used for impeachment purposes only and "does not constitute evidence in chief." Id.

Counsel objected to the prosecutor's attempts to impeach his own witness but failed to invoke, as he should have, the correct rule, New York Crim. Pro. Law § 60.35(1). He also failed to ensure that the judge gave a limiting instruction immediately after the impeaching tape was played. This error by both counsel and the court was no doubt occasioned by the failure of the prosecution at that time to formally offer the tape into evidence at the time of its use.

Although it could be said that counsel's conduct was unreasonable by failing to cite the

correct rule, Jones has failed to show prejudice since the Appellate Division reached the merits of the application of New York Crim. Pro. Law § 60.35(1) and found that because "[Belgrave's] trial testimony tended to disprove the People's case and affirmatively damaged the People's position. . . the People were properly permitted to employ the tape to impeach [him] pursuant to CPL 60.35 (1)."[2] People v. Jones, 25 A.D.3d 724, 725 (2d Dep't 2006). The New York Court of Appeals failed to disturb this conclusion when it denied Jones' leave to appeal. Thus, had counsel interposed the proper objection, he would not have prevailed on appeal.

Although counsel should have reminded the court to give a limiting instruction, Jones once again fails to show prejudice since an appropriate instruction was given in the final charge.

After summations, the trial judge gave the following instruction:

If a witness has made such inconsistencies. . . you may consider whether and to what

---

[2] This appears to have been a close question under state law. Compare People v. Faulkner, 632 A.D.2d 525, 526 (2d Dep't 1995) (witness' testimony that he did not see who did the shooting and saw defendant "just standing there" contradicted his Grand Jury testimony that he saw defendant holding the gun from which fatal shots were fired and affirmatively damaged the People's case for impeachment purposes), People v. Barber, 186 A.D.2d 483 (1st Dep't 1992) (witness' denial at trial that defendant pulled out a gun contradicted prior sworn statement that he saw defendant pull a gun and shoot victim and affirmatively damaged People's case for impeachment purposes), and People v. Magee, 128 A.D.2d 811 (2d Dep't 1987) (eyewitness' testimony that he did not observe the defendant at the crime scene was contrary to prior, written signed statement and affirmatively damage the People's case for impeachment purposes), with People v. Andre, 185 A.D.2d 276, (2d Dep't 1992) (witness' testimony that he did not hear an argument between defendant and victim or see defendant shoot victim did not affirmatively damage the People's case and could not be contradicted by testimony from prior trial in which witness stated that defendant had been the shooter), People v. Rios, 166 A.D.2d 616 (2d Dep't 1990) (witness' testimony that he did not see the defendant stab the victim did not affirmatively damage the People's case and could not be contradicted by prior audiotaped statement where he stated he had seen the defendant stab the victim), and People v. Comer, 146 A.D.2d 794 (2d Dep't 1989) (witness' testimony that he did not know who shot the victim because he had been in another room at the time did not affirmatively damage the People's case and could not be contradicted by prior Grand Jury testimony in which he stated that he identified defendant as the perpetrator).

11

extent they affect the truthfulness or the accuracy of that witness' testimony here at this trial. The contents of a prior inconsistent statement are not proof of what happened. You may use the evidence of a prior inconsistent statement only to evaluate the truthfulness or accuracy of the witness' testimony here at trial. Under no circumstances are you to consider such prior statements as evidence in chief in this case.

(Tr. 916-17.) The Appellate Division found that this jury charge regarding the use of the taped statement was adequate. See People v. Jones, 25 A.D.3d 724, 725-26 (2d Dep't 2006).

Finally, even if the impeachment evidence should have been precluded and a proper objection would have had that result, Jones still cannot prevail. In evaluating the Strickland prejudice prong, a court considers the cumulative weight of error to determine whether the prejudice reaches the constitutional threshold. Harris v. Artuz, 288 F.Supp.2d 247, 256 (E.D.N.Y. 2003) (internal quotation marks omitted). Moreover, "the thinner the case against the defendant, the greater the impact of counsel's error. . . . [Alternatively, [t]he stronger the case, independent of the error, the less likely relief." Gueits v. Kirkpatrick, 618 F.Supp.2d 193, 248 (E.D.N.Y. 2009). This was not a thin case based on circumstantial evidence. Eyewitnesses Michael Talbot and Martha Tuten both placed Jones at the crime scene and identified him as the shooter. Tuten identified Jones as the man playing dice outside of 1750 Prospect Street on the night of July 10, 2002 (Tr. 758-59), and the one who "ran up to [Talbot's] car and started shooting." (Tr. 763.) And Talbot testified that he saw Jones run up to the side of Talbot's car, heard about four gunshots, and then saw Jones pointing a gun at the car. (Tr. 552-55.) Even if the jury improperly considered Belgrave's testimony as evidence in chief, in view of the strength of other evidence, the tape would not have created a reasonable probability that the outcome at trial would have been different.

2. <u>Prosecutor's Summation</u>

Jones also claims that trial counsel was ineffective for his failure to object to the People's "burden-shifting" summation. Respondent contends that counsel's few objections to the prosecutor's summation were tactical decisions that did not amount to prejudicial error. This Court agrees with respondent that Jones' counsel was not deficient in this respect.

Jones argues that the prosecutor shifted the burden of proof by placing the onus on the defense to explain why the prosecution's witnesses testified as they did. Jones points to the following language of the prosecutor's summation: " . . .[T]hink about what is Mr. Talbot's rationale for coming in here and lying? If the defendant wasn't the guy who [killed Rivers], why would [Talbot] come in here and say it?" (Tr. 872.) Jones also identifies another rhetorical question in the summation as burden-shifting: "[I]f this defendant didn't do it why are his friends coming in here, the people that he has known for his whole life that he grew up with, why are they coming in and identifying. . . him as the shooter[?]" (Tr. 887.)

In order to reach the level of a constitutional violation, a prosecutor's remarks in summation must, "taken in the context of the entire trial, result[ ] in substantial prejudice, or so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." <u>United States v. Flaharty</u>, 295 F.3d 182, 202 (2d Cir. 2002) (citation omitted). Where there is no prejudicial error in the Government's summation, the failure to raise an otherwise futile objection does not render counsel ineffective. <u>United States v. Cohen</u>, 427 F.3d 164, 170 (2d Cir. 2005); see also <u>Cuevas v. Henderson</u>, 801 F.2d 586, 592 (2d Cir.1986) (concluding that because "[t]he prosecutor's summation was appropriate. . . defense counsel's failure to object does not support a conclusion that his performance was not reasonably competent"). Furthermore, "decisions such

13

as when to object and on what grounds are primarily matters of trial strategy and tactics and thus are virtually unchallengeable absent exceptional grounds for doing so." Cohen, 427 F.3d at 170.

The prosecutor's purported "burden-shifting" comments during summation were not improper much less constitutionally problematic. A prosecutor has wide latitude during summation, particularly when responding to defense counsel's summation. Walker v. Cunningham, 2008 WL 4737664, at *5 (E.D.N.Y. 2008). In the challenged statements, the prosecutor was commenting fairly on the evidence or responding to the defense summation, which contended that the prosecution's witnesses were unreliable and not believable and asserted an alternative theory of the case. Moreover, any potential error was cured by the trial judge explicitly instructing the jury as to the burden of proof: "the defendant is not required to prove or disprove anything. The People have the burden of proving the defendant guilty beyond a reasonable doubt. . . ." (Tr. 908-09.) And this "burden of proof never shifts from the People to the defendant." (Tr. 929.) Accordingly, petitioner's claim here is meritless.

Jones also complains that the prosecutor's characterizations of Martha Tuten and Michael Talbot constituted improper bolstering and personal vouching of the prosecution's witnesses. Jones argues that the prosecutor erroneously referred to Tuten as Jones's "friend" (Tr. 883, 887), which strengthened her identification of Jones and suggested she had no motivation to lie. He also complains that the prosecutor vouched for Talbot in assuring the jury that Talbot had no motivation to lie, did not have an "agenda" or an "axe to grind," and had nothing to gain by testifying and not telling the truth. (Tr. 872-73.)

Although "the prosecution may not vouch for the credibility of its witnesses, the government is allowed to respond to an argument that impugns its integrity or the integrity of its

14

case. . . ." United States v. Carr, 424 F.3d 213, 227 (2d Cir. 2005). Particularly, when defense counsel has "attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." Id. (internal quotations and citations omitted). See also United States v. Rivera, 22 F.3d 430, 438 (2d Cir. 1994).

The prosecutor did characterize Tuten as Jones' friend in his summation (Tr. 883, 887), but such characterization was not inappropriate given the evidence revealed in Tuten's direct. Tuten testified that she knew Jones since she "was little," and saw him "every other day, something like that." (Tr. 758.) When asked specifically about her relationship with Jones, Tuten responded that they were on "hi and bye" terms. (Tr. 758.) Although the two may not have been especially close, Tuten and Jones were clearly acquaintances and knew each other since childhood.

As for the prosecutor's comments about Talbot and his motivation to testify, the prosecutor was simply responding to defense counsel's summation remarks about the credibility of the prosecution witnesses. Such remarks by the prosecutor were proper: his statements did not amount to expressing a "personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant," but constituted proper argument that the prosecution witnesses, "whose veracity and credibility had been fiercely attacked by defense counsel, had no motive to testify falsely." Carr, 424 F.3d at 228 (internal quotation marks and citations omitted). Thus, it was not unreasonable for defense counsel not to have objected to the prosecutor's summation comments.

In sum, Jones has not demonstrated that the Appellate Division's determination that he

"was not deprived of the effective assistance of counsel" is contrary to, or involved an unreasonable application of, the <u>Strickland</u> standard.

III. <u>Conclusion</u>

Accordingly, habeas corpus relief is not warranted with respect to Jones' six claims of ineffective assistance of trial counsel. For all of the foregoing reasons, the petition for a writ of habeas corpus is denied. As this petition presents no "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
December 18, 2009

/S/
Carol Bagley Amon
United States District Judge